UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:26-cv-265

Z'LEAH LIBURD,

      Plaintiff,

vs.

BERNS STEAK HOUSE, INC.,
a Florida Corporation,

      Defendant.

_____/

## COMPLAINT, DEMAND FOR DECLARATORY RELIEF, AND PERMANENT INJUNCTIVE RELIEF REQUESTED

COMES NOW, Plaintiff Z'LEAH LIBURD, (hereinafter "Plaintiff" or "Liburd"), by and through her undersigned counsel, asserts the following claims against Defendant Berns Steak House, Inc., (hereinafter "Berns Steak House" or "Defendant"), a Florida Corporation, and demands for declaratory relief and requests a permanent injunction, as follows.

1.      Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read Website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less

than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

2.    Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

3.    Plaintiff brings this civil rights action against Defendant for its failure to design, construct, maintain, and operate its Website to be fully accessible to and independently usable by Plaintiff. Defendant's denial of full and equal access to its Website, and therefore denial of its goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

4.    Defendant, Berns Steak House, Inc., operates the bernssteakhouse.com, restaurant services platform across the United States. This Website constitutes a place of public accommodation. Defendant's Website provides consumers with access to various steakhouse offerings, which Defendant offers in connection with its physical location. Yet, bernssteakhouse.com contains significant access barriers, such as incompatibility with screen reading software, that make it difficult if not impossible for blind and visually-impaired customers to use the Website. In fact, the access barriers make it impossible for blind and visually-impaired users to enjoy and learn about the services at bernssteakhouse.com prior to entering Defendant's physical location.

5.    Consumers may use Defendant's services and access other content at

https://bernssteakhouse.com/, the Website Defendant owns, operates, and controls. Another function of the Website is to provide the public with information on Berns Steak House's physical location, hours of operation, and contact details. The Website allows users to explore a variety of fine-dining offerings, including dry-aged, cut-to-order steaks, classic steakhouse entrées, seafood dishes, and an award-winning wine program, to make dining reservations online, and learn about the restaurant's history and dining policies. Additionally, the Website provides links to the restaurant's social media channels, including Facebook, Instagram, and YouTube, to engage with guests and stay updated on news, events, and announcements.

6.    Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living and equal opportunity for persons with disabilities, including those barriers created by Websites and other public accommodations that are inaccessible to blind and visually impaired persons.

7.    Defendant's Website, http://bernssteakhouse.com/ (the "Website"), is not equally accessible to blind and visually impaired consumers, as required by the ADA, because it is not compatible with screen reader software specifically designed for the blind and visually-impaired to access the Website. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that

Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

8.    The blind have a greater need than the sighted to have access to various Websites to compare merchandise, benefits and prices, to get more information about the companies, their locations and hours of operation. The lack of an accessible Website deters blind people from visiting Defendant's physical locations and enjoying the unique services that it provides to the public.

9.    By failing to make its Website available in a manner compatible with computer screen reader programs, Defendant, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

## JURISDICTION AND VENUE

10.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

11.    Venue is proper in this district under 28 U.S.C. § 1391(b)(1–2) because Defendant conducts and continues to conduct a substantial and significant amount of

business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize the subject Website within this Judicial District.

12.    Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Middle District of Florida that caused injury and violated rights the ADA prescribes to Plaintiff. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District: Plaintiff has been denied the full use and enjoyment of the facilities, goods and services offered to the general public, on Defendant's Website in Pasco County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access, and now deter Plaintiff on a regular basis from accessing the Defendant's Website in the future.

13.    The United States Department of Justice Civil Rights Division has recently provided "Guidance on Web Accessibility and the ADA.", which states in part, "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

14.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201–02.

15.     This lawsuit is aimed at providing legally blind users like the Plaintiff a full and equal experience.

## **THE PARTIES**

16.     Plaintiff Z'leah Liburd, at all relevant times, is and was a resident of Pasco County, Florida.

17.     Plaintiff is a blind, visually-impaired handicapped person suffering from Retinitis pigmentosa with Coat's like response of both eyes, and chronic retinal detachment in the right eye, and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1–2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*.

18.     Defendant is, and at all relevant times was, doing business in this jurisdiction.

19.     Defendant Berns Steak House, Inc., is and was, at all relevant times herein, a Florida Corporation with its principal place of business located at 1208 South Howard Avenue, Tampa, Forida 33606. Defendant operates the bernssteakhouse.com restaurant services platform and advertises, markets, and operates in the State of Florida and throughout the United States.

20.     Defendant's Website, and its goods and services offered thereupon, is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. §

12181(7).

## STANDING

21.    Plaintiff Z'leah Liburd is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1–2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*.

22.    Berns Steak House, Inc. provides the public a Website known as bernssteakhouse.com, which provides consumers access to fine-dining offerings. Consumers across the United States use Defendant's Website to find the information about restaurant location and hours of operation, to explore a variety of fine-dining offerings, including dry-aged, cut-to-order steaks, classic steakhouse entrées, seafood dishes, and an award-winning wine program, to make dining reservations online, and learn about the restaurant's history and dining policies. Additionally, the site provides links to the restaurant's social media channels, including Facebook, Instagram, and YouTube, to engage with guests and stay updated on news, events, and announcements.

23.    Defendant's Website, https://bernssteakhouse.com/, is directly integrated with and operates as a gateway to Defendant's brick-and-mortar restaurant located at 1208 South Howard Avenue, Tampa, Florida 33606. The Website allows customers to view the menu, prices, offerings available at the restaurant and to make reservations for dining at the location. The Website is the primary means by which customers, including

Plaintiff, can review available items, determine pricing, and make online reservation prior to visiting the Tampa restaurant.

24.    Plaintiff has been denied the full enjoyment of the facilities, goods and services of bernssteakhouse.com, as well as deprived of the opportunity to enjoy the facilities, goods and services of Defendant's brick and mortar location, as a result of accessibility barriers on bernssteakhouse.com.

25.    Plaintiff encountered multiple access barriers that denied her full and equal access to the facilities, goods and services offered by Defendant to the public. Plaintiff was thus, among other things, unable to: learn about restaurant location, hours and contact information, determine available menu offerings and other information from the Website. These access barriers prevented Plaintiff from accessing the Defendant's physical location to patronize it.

26.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient JAWS screen-reader user and uses it to access the Internet. On multiple occasions, and most recently on December 8, 2025, Plaintiff has visited the Website, using a screen-reader. Liburd tried to make a reservation, however, Plaintiff encountered multiple accessibility barriers. These barriers prevented Plaintiff from accessing the goods and services from Defendant's location because of the incompatibility of the Defendant's Website with Plaintiff's screen-reading software. Despite these barriers,

Plaintiff plans to visit Defendant's physical location at 1208 South Howard Avenue, Tampa, Florida 33606 within the next nine months because of the restaurant's appealing offerings and the opportunity to taste their food and beverages in person.

27.    Unfortunately, Plaintiff was unable to complete make a reservation due to the inaccessibility of Defendant's Website, because it was not compatible with her screen reading software, and thus prevented her from patronizing Defendant's restaurant located at 1208 South Howard Avenue, Tampa, Florida 33606.

28.    On multiple occasions, like August 8, 2025, and most recently on December 8, 2025, Plaintiff was searching online for a fine-dining restaurant offering a high-quality steakhouse experience. During her search, Liburd discovered the Defendant's website, bernssteakhouse.com, which represents Berns Steak House. Thus, Plaintiff decided to visit the website to learn more about the restaurant, review its menu offerings, and attempt to make a reservation. Upon accessing the site, Plaintiff encountered multiple accessibility barriers. The website did not include a "Skip to Content" link, which prevented Plaintiff from bypassing repetitive navigation menus. As a result, each time Plaintiff navigated to a new page, her assistive technology was forced to read through the same blocks of navigation content before she could reach the main content of the website. This created unnecessary repetition, increased the time required to access information, and made efficient navigation of the website more difficult. In addition, when Plaintiff attempted to access the menu button to explore more about the restaurant's offerings, the

action opened a dialog box; however, keyboard focus did not shift from the trigger button to the newly opened dialog. Because the focus remained outside the dialog box, Plaintiff screen reader did not announce the dialog's content or available options. This accessibility issue prevented Plaintiff from understanding that a menu had opened, navigating within the dialog, or accessing the information it contained, effectively blocking her from exploring the restaurant's offerings through the website. Furthermore, Plaintiff attempted to enter the number of guests and select her preferred reservation date on the reservation page. However, the calendar lacked proper instructions on how to interact with it, including which arrow keys should be used for navigation. As a result, Plaintiff was unable to input her preferred reservation date and time. Due to the Website's accessibility barriers, including ambiguous links, not keyboard focusable interactive elements, and an inaccessible reservation interface, Plaintiff was unable to complete the reservation process at the Tampa restaurant.

29.    Due to Defendant's failure to build the Website in a manner that is compatible with screen access programs, Plaintiff was unable to understand and properly interact with the Website and was thus denied the benefit of making a reservation from the Website connected to Defendant's restaurant. Defendant's Website's incompatibility with Plaintiff's screen-reader software prevents her from patronizing the Defendant's physical location because of the perceived feelings of animosity towards blind people like Plaintiff.

30.     The fact that Plaintiff could not communicate with or within the Website left her feeling excluded, frustrated and humiliated and gave her a sense of isolation and segregation as she being unable to participate in the same online experience, with the same access to sales, services, discounts and promotions, as provided at the Website and for use in the physical location as the non-visually disabled public. These barriers, and the feelings it created, prevented the Plaintiff from accessing the Defendant's physical location to patronize it via its' Website.

31.     The law requires that the Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers, such as being WCAG 2.2 AA compliant to allow screen reading software to function properly and allow blind and visually-impaired people to access the Website.

32.     These access barriers on Defendant's Website have prevented Plaintiff from visiting Defendant's physical location and enjoying them equal to sighted individuals because: Plaintiff was unable to find the location and hours of operation of Defendant's location on its Website and other important information, preventing Plaintiff from visiting the location to take advantage of the services that it provides to the public.

33.     Plaintiff has been, and in absence of an injunction will continue to be injured by Defendant's failure to provide its online content and services in a manner that is compatible with screen reader technology.

34.    Because of Defendant's denial of full and equal access to and enjoyment of the good, benefits and services of the Website, Plaintiff has suffered an injury in fact due to her inability of making a reservation, which is a concrete and particularized injury, and is a direct result of Defendant's failure to make its' Website compatible with Plaintiff's screen reading software.

35.    Plaintiff intends to patronize Defendant's restaurant located at 1208 South Howard Avenue, Tampa, Florida 33606 in the immediate future. Plaintiff regularly travels to the Tampa area and plans to visit the restaurant within the next nine months to access an array of goods and services, including their steakhouse offerings. Plaintiff's intent to visit is genuine and imminent, but her ability to do so on equal terms is presently impeded by Defendant's inaccessible Website, which prevents her from independently reviewing menu offerings, confirming pricing, and making a reservation in advance of her visit.

36.    Despite this direct harm and frustration, Plaintiff intends to attempt to access the Website in the future to make a reservation on the Website with the intention of patronizing Defendant's physical location at 1208 South Howard Avenue, Tampa, Florida 33606 within the next nine months.

## **NATURE OF ACTION**

37.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

38.    In today's tech-savvy world, blind and visually impaired people have the ability to access Websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the internet. Unless Websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access Websites, and the information, products, goods and contained thereon.

39.    Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screens reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS", is currently one of the most popular, and downloaded screen-reading software programs available for a Windows computer.

40.    For screen-reading software to function, the information on a Website must be capable of being rendered into text. If the Website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content or access to the goods and services otherwise available to sighted users.

41.    The international Website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making Websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their Websites are accessible.

42.    Non-compliant Websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

    a.    A text equivalent for every non-text element is not provided;

    b.    Title frames with text are not provided for identification and navigation;

    c.    Equivalent text is not provided when using scripts;

    d.    Forms with the same information and functionality as for sighted persons are not provided;

    e.    Information about the meaning and structure of content is not

conveyed by more than the visual presentation of content;

f.   Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.   If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.   Web pages do not have titles that describe the topic or purpose;

i.   The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.   One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.   The default human language of each web page cannot be programmatically determined;

l.   When a component receives focus, it may initiate a change in context;

m.   Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.   Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.   In content which is implemented by using markup languages, elements

do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.  Inaccessible Portable Document Format (PDFs); and,

q.  The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

43.  Websites have features and content that are modified on a daily, and in some instances hourly basis and a one time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding in change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible Website has been rendered accessible, and whether corporate policies related to Website technologies have been changes in a meaningful manner that will cause the Website to remain accessible, the Website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## STATEMENT OF FACTS

44.    Defendant is a company that owns and operates http://bernssteakhouse.com/ (its "Website"), offering features which should allow all consumers to access the goods and services offered by Defendant. This Website forms a nexus between online services and the Defendants' brick and mortar place of public accommodation located at 1208 South Howard Avenue, Tampa, Florida 33606.

45.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient JAWS screen-reader user and uses it to access the Internet. Plaintiff visited the Website on August 12, 2025 and on December 8, 2025 using a screen-reader.

46.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is a proficient JAWS screen-reader user and uses it to access the Internet. On two occasions, such as August 12, 2025, and most recently on December 8, 2025, Plaintiff has visited the Website, using a screen-reader. Plaintiff tried to make a reservation, however, Plaintiff encountered multiple accessibility barriers. Upon accessing the site, Plaintiff encountered multiple accessibility barriers. The website did not include a "Skip to Content" link, which prevented Plaintiff from bypassing repetitive navigation menus. As a result, each time Plaintiff navigated to a new page, her assistive technology was forced to read through the same blocks of navigation content before she could reach the main content

of the website. This created unnecessary repetition, increased the time required to access information, and made efficient navigation of the website more difficult. In addition, when Plaintiff attempted to access the menu button to explore more about the restaurant's offerings, the action opened a dialog box; however, keyboard focus did not shift from the trigger button to the newly opened dialog. Because the focus remained outside the dialog box, Plaintiff screen reader did not announce the dialog's content or available options. This accessibility issue prevented Plaintiff from understanding that a menu had opened, navigating within the dialog, or accessing the information it contained, effectively blocking her from exploring the restaurant's offerings through the website. Furthermore, Plaintiff attempted to enter the number of guests and select her preferred reservation date on the reservation page. However, the calendar lacked proper instructions on how to interact with it, including which arrow keys should be used for navigation. As a result, Plaintiff was unable to input her preferred reservation date and time. These barriers prevented Plaintiff from accessing the goods and services from Defendant's location because of the incompatibility of the Defendant's Website with Plaintiff's screen-reading software. Despite these barriers, Plaintiff plans to visit Defendant's physical location at 1208 South Howard Avenue, Tampa, Florida 33606 within the next nine months, because of the restaurant's appealing offerings and the opportunity to taste their food and beverages in person.

47.    As a result of these accessibility barriers, the Website operated as an

intangible barrier that prevented Plaintiff from fully accessing and enjoying the goods and services of Defendant's Tampa restaurant on equal terms with sighted customers. Without the ability to independently navigate the Website, review menu options, confirm pricing, and complete an online reservation, Plaintiff was effectively excluded from meaningful access to Defendant's physical location and deterred from patronizing the restaurant.

48.    The Website contains access barriers that prevent free and full use by the Plaintiff using keyboards and screen reading software. These barriers include but are not limited to: inaccurate heading hierarchy, inadequate focus order, ambiguous link texts, changing of content without advance warning, the lack of navigation links, the denial of keyboard access for some interactive elements.

49.    Among other accessibility issues encountered by Plaintiff when visiting the Defendant`s Website are the following:

a.    Heading hierarchy was not properly defined, and there were missing heading levels. As a result, quick navigation through headings on the website did not help Plaintiff effectively find the content of interest and understand the logical structure of the home page;

b.    Interactive elements from the website could not be focused with the Tab key. The website did not provide helpful instructions on how to access the interactive element using arrow keys. Plaintiff did not know about the

interactive element from the page;

c.    Form expirations and time-outs were present on the web page. Mechanism to control a session timeout was not provided;

d.    "Skip to content" link was not implemented. Plaintiff was not provided with the mechanism to bypass repeated blocks of content;

e.    When opening a dialog, focus order did not move from trigger button to dialog items. Plaintiff was confused while navigation, encountering information in an inconsistent order with the meaning of the content that could not be operated from the keyboard;

f.    Several links had ambiguous texts that were unclear to Plaintiff. Lack of detailed description of the link target and destination page made it difficult for Plaintiff to perceive their purpose;

g.    Logo was used as link without appropriate alternative text. Plaintiff was not informed about the purpose of the graphic icon;

h.    Links led to other websites and did not indicate that they were external. Plaintiff was disoriented on another website. The link text failed to warn legally blind customers about the significant change of the context;

i.    Plaintiff tried to follow the links from the website and received no prior warning that the links opened new windows. As a result, Plaintiff

unsuccessfully tried to use the "Back" function of the browser to go to the previous page and became disoriented;

j.   Calendar or date picker did not provide accessible information and description for form controls which would allow Plaintiff to easily select a date and book a service. Plaintiff was unaware of how to use calendar because of a lack of instructions.

50.   These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's Website the same way sighted individuals do or access the opening times, goods, and services of the physical location.

51.   Plaintiff intends to patronize Defendant's Tampa restaurant in the next nine months if the Website is made accessible. Plaintiff regularly travels to the Tampa area and plans to visit the restaurant within the next nine months to access an array of goods and services, including Defendant's steakhouse offerings. Plaintiff's inability to independently access the Website continues to prevent her from planning and completing such visits. Absent remediation of the Website's accessibility barriers, Plaintiff faces a real and immediate threat of continued discrimination and exclusion from Defendant's physical location because the lack of compatibility prevents her from accessing offerings or acquiring the location or operational times of the Defendant's physical location.

52.   It is, upon information and belief, Defendant's policy and practice to deny

Plaintiff, along with other blind or visually-impaired users, access to Defendant's Website, and to therefore specifically deny the goods and services that are offered to the general public. Due to Defendant's failure and refusal to remove access barriers to its Website, Plaintiff has been and is still being denied equal access to Defendant's Website, as well as the physical location, and the numerous goods and services and benefits offered to the public through the Website.

53.    Due to the inaccessibility of Defendant's Website, Plaintiff, who needs a screen-reader, cannot fully and equally use or enjoy the facilities, products, and services Defendant offers to the public on its Website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from equal access to the Website. The inaccessibility of Defendant's Website amount to an intangible barrier to its physical location because it prevents Plaintiff from acquiring the information related to its location, operating hours, or prevented her from making a reservation for the physical location.

54.    Plaintiff intends to patronize Defendant's Tampa restaurant within the next nine months and has concrete plans to do so. Plaintiff attempted to use Defendant's Website to facilitate this visit, including reviewing available offerings and making a reservation, but was unable to do so due to accessibility barriers. These barriers prevented Plaintiff from accessing Defendant's physical location and create a real and immediate threat of continued discrimination.

55.    If the Website were equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.

56.    Through her attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

57.    Because simple compliance with the WCAG 2.2 Guidelines would provide Plaintiff with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

    a.    Constructing and maintaining a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

    b.    Failure to construct and maintain a Website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff; and,

    c.    Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff.

58.    Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as

alleged herein.

59.    The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .
> 42 U.S.C. § 12188(a)(2).

60.    Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.2 guidelines for Defendant's Website. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

a.    Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.2 guidelines;

b.    Regularly check the accessibility of the Website under the WCAG 2.2 guidelines;

c.    Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies under the WCAG 2.2 guidelines; and,

d.    Develop an accessibility policy that is clearly disclosed on Defendant's

Websites, with contact information for users to report accessibility- related problems.

61.    Although Defendant may currently have centralized policies regarding maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

62.    Defendant has, upon information and belief, invested substantial sums in developing and maintaining their Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making their Website equally accessible to visually impaired customers.

63.    Without injunctive relief, Plaintiff will continue to be unable to independently use the Website, or access Defendant's physical location, violating her rights under the ADA.

## FIRST CAUSE OF ACTION:
## VIOLATIONS OF THE ADA, 42 U.S.C. § 12182, *et seq.*

Plaintiff realleges the allegations contained in paragraphs One through Sixty-Three as if set forth herein.

64.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101*, et seq.*, provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns,

leases (or leases to), or operates a place of public accommodation.
42 U.S.C. § 12182(a).

65.    Defendant's Website is a public accommodation within the definition of
Title III of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the
general public, and as such, must be equally accessible to all potential consumers.

66.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful
discrimination to deny individuals with disabilities the opportunity to participate in or
benefit from the products, services, facilities, privileges, advantages, or accommodations
of an entity. *See* 42 U.S.C. § 12182(b)(1)(A)(i).

67.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful
discrimination to deny individuals with disabilities an opportunity to participate in or
benefit from the products, services, facilities, privileges, advantages, or accommodation,
which is equal to the opportunities afforded to other individuals. *See* 42 U.S.C. §
12182(b)(1)(A)(ii).

68.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination
also includes, among other things:

[A] failure to make reasonable modifications in policies, practices, or procedures,
when such modifications are necessary to afford such goods, services, facilities,
privileges, advantages, or accommodations to individuals with disabilities, unless
the entity can demonstrate that making such modifications would fundamentally
alter the nature of such goods, services, facilities, privileges, advantages or
accommodations; and a failure to take such steps as may be necessary to ensure
that no individual with a disability is excluded, denied services, segregated or

otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.
42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

69.    The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

70.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

[*Second Cause of Action begins on the next page*]

## SECOND CAUSE OF ACTION:
## DECLARATORY RELIEF

Plaintiff realleges the allegations contained in paragraphs One through Sixty-Three as if set forth herein.

71.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of its Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*.

72.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

  a.  A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., and the laws of Florida;

  b.  A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its Website fully compliant with the requirements set forth in the ADA, and its implementing regulations, so that the Website is

readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, and the laws of Florida;

d. Payment of nominal damages;

e. Pre- and post-judgment interest;

f. An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees; and

g. Such other and further relief as this Court deems just and proper.

Dated: Thursday, January 29, 2026

EQUAL ACCESS LAW GROUP, PLLC
*Attorneys for Plaintiff*

By: Mark Berrios-Ayala
Florida Bar Number 1002272
68-29 Main Street,
Flushing, New York 11367
O: 844-731-3343
D: 321-364-4507
Email: MBA@ealg.law